All right, counsel, you may proceed. Good morning. May it please the Court, my name is Martin Naviglio. I represent the appellant, Robert Berry. I'd like to see two minutes for rebuttal, please. All right, watch the clock. The greatest tell that the federal government had exclusive jurisdiction in this case was unintentionally set forth in every charging document that was filed by the state of Nevada, whether it be the complaint, the amended complaint, the information, or the amended information. The state at all times alleged that Mr. Berry had attempted to rob Fox Peak, a gas station on Indian land belonging to the found Paiute Shoshone tribe. Now it was only on direct appeal that the state of Nevada first dismissed the notion that Mr. Berry's claim had targeted tribal property. But irrespective, the record in this case shows clearly that Mr. Berry's crime involved and affected tribal property. Here, per the state's own case, Mr. Berry scouted an Indian business. He attempted to steal property from that Indian business. He threatened an employee of the tribe, the clerk. He caused a confrontation with that clerk, which ultimately caused the clerk to become injured and miss work for several months, was arrested by tribal police officer Babcock, and was originally even charged with burglary for his actions in the Indian gas station. Now, on direct appeal, the Nevada Supreme Court and the state approached this issue as a matter of state law question. They looked at the Nevada attempted robbery statute and they determined that the tribe was not a victim per the statute. However, whether the state had jurisdiction over a crime that occurred on Indian land has always been a federal question. Was it brought up before the state court at all? It was brought up on direct appeal, Your Honor, to the Nevada Supreme Court. And the Nevada Supreme Court decided this case by looking at Nevada's robbery statute. And this is a federal question, it's not a state law question. And what the Nevada Supreme Court should have asked is, did this crime involve or affect Indian property? And if the answer to that was yes, then pursuant to a plethora of cases at the time, United States v. Chavez, Dura v. even McGirt, which wasn't decided until 2020, pursuant to all those cases, the standard was did this crime by a non-Indian on Indian land involve or affect Indian property? Did it affect the tribe's rights? McBratney is the controlling case, is it not? McBratney is the controlling case right now. Right. Supreme Court, right? Right. Okay. And they don't say anything about basically the collateral damage, it's who the victim is, right? What McBratney says is that crimes on Indian lands against Indians, that the state has inherent jurisdiction over those cases. Now, in the dissent, Justice Gorsuch very eloquently explains that this inherent jurisdiction, we don't know when it originated. It came at some nebulous point in the 19th century after Worcester was decided in 1830. However, in this case, and in the case of Nevada, which is the very own particular case of Nevada, whatever inherent jurisdiction Nevada had, it renounced by a proclamation of the governor in 1955. Let me ask you this. I assume you're not asking us to invoke Castro Huerta that you were quoting from, right? Because your client loses automatically under that one, right? Yes. If we invoke Castro Huerta. Yes. Okay. So we go back to what McBratney means and what's your best argument that since Luft, if I understand the man's name correctly, the clerk who was injured, who was not an Indian, he was the victim according to the state Supreme Court, right? And that's what your client was ultimately charged with, not with injuring property owned by the tribe. So what controls here? I mean, he injured a non-Indian on Indian land. He himself is not an Indian. Doesn't McBratney cover that? No, Your Honor. McBratney concerned the murder of a non-Indian by a non-Indian. Right. And in that case there was no tribal property issue. Okay. I know you want to aggregate the tribal property issue, but I know that the original charging document did refer to that. But the reality is at the end of the day, your client was not convicted of harming tribal property, was he? Yes, Your Honor. He was not, but pursuant to the controlling law at the time, which again is United States v. Chavez, Williams v. Lee, those cases look beyond who the statutory victim was. You could look beyond is what they were saying, but that didn't happen in this case. They didn't look beyond. The question you're talking about would be what happened if they had also said that your client had damaged the service station or damaged the property? Then we'd have the issue you're talking about. But here, your client, if I understand correctly, was convicted of hurting Mr. Love, who was not an Indian. So I'm puzzled as to why McBratney doesn't control. Well, McBratney doesn't control because of these string of cases that came after McBratney that applied it in a very narrow manner and that noted that even if a non-Indian is involved as a victim, if tribal interests are affected, then there is no state jurisdiction. And whether the state of Nevada chose to look at its statute or not, that was the controlling federal law at the time. And pursuant to the supremacy clause, federal law controlled, particularly an issue as important as to whether the state could overcome this presumption that the federal government had jurisdiction over a crime on Indian land. And that's because of the important questions that are at hand, which involve tribal sovereignty. What's the effect of this Castro Huerta case? Well, the Castro Huerta case determined again that there's now inherent jurisdiction over crimes by or against Indians on Indian land. That's what we have here, right? Going forward, that's what we have. They said that the state had this inherent jurisdiction to do that. But what's particular and unique about this case is that whatever inherent jurisdiction Nevada had, it renounced in 1955 by a proclamation of the governor which explicitly says, we will not assert jurisdiction over these crimes that occur on Churchill County. And so, even if Castro Huerta... What authority did the governor have to do that? I assume he was renouncing laws that had been enacted by the previous legislature and signed by the previous governor. I know we've had presidents that may have presumed to do such things, but can a governor just say, you know, I don't like that statute. We're not going to follow it anymore. No, what happened actually is that when Nevada implemented Public Law 280, which is what gave the states the authority to exercise jurisdiction over these cases, simultaneously with that, and with that law, the governor issued a proclamation that said, this law, pursuant to which Nevada will exercise jurisdiction, will not apply to Churchill County. So that was the way he was going to have his administration enforce it, right? Yes. But another governor could have said something different, right? Well, that's an interesting point, Your Honor, because another governor in 1968 and another Nevada legislature in 1968, when Public Law 280 was amended, chose again not to seek the consent of Churchill County of the Fallon-Paiutechoshan Tribe, and explicitly revoked any jurisdiction over tribes that had not given consent. So here we have... Or did he just say, we won't try to enforce it? They said, the state of Nevada hereby receives from and relinquishes jurisdiction over any area that has not consented to jurisdiction. That's a direct cite. So in 1955, Nevada says, we renounce whatever jurisdiction we have. And in 1973, again, they say we renounce jurisdiction over those places that have not given us, or tribes that have not consented. So twice now, Nevada has determined that it doesn't have jurisdiction over cases involving or affecting tribes or their property. I'd like to reserve for the rest of my time. All right. Thank you, Counsel. May it please the Court, Jeffrey Conner from the Nevada Attorney General's Office on behalf of the respondents. I'd like to start with Judge Smith's question about whether McBrady controls here. I think very clearly does. And because this is an AEDPA case, it makes the question here very easy. Petitioner has not cited to any clearly established case that would prevent the Nevada Supreme Court from determining who was the victim of this crime. And once the Nevada Supreme Court determines that the crime was committed by a non-Indian against a non-Indian victim, that falls squarely within the scope of McBrady. And that's the end of this case. I think that's a very simple way to look at this. This Court is in accord with the Nevada Supreme Court's understanding of the offense of robbery, United States v. Burns, or this Court. Petitioner in that case was trying to assert that the Major Crimes Act did not apply because the robbery that he was committing was against the tribe as opposed to an Indian or other person, and that the tribe was not a person. This Court rejected that argument, finding that the store clerk was the victim of the robbery. That case is directly on point with this here, too, where the Nevada Supreme Court looks at this and says that Luff Jr., the store clerk who was a non-Indian, was the victim of the offense. We don't need to get to Castro Huerta, do we? Not at all, Your Honor. I think this is an easy case under AEDPA. If this Court did get to Castro Huerta, though, just to very quickly address their arguments under Teague and Bowie, I don't think Teague or Bowie apply here. Teague is a case about retroactivity of rules of criminal procedure. Castro Huerta is a preemption case, which is the entire analysis in that case focuses on questions of statutory interpretation. Teague doesn't apply to the Court's determinations on interpreting Congressional statutes. So Teague has no application here. Bowie is a due process case about whether or not a ruling from a State Supreme Court addressing a potentially vague criminal statute provided whether or not the defendant had adequate notice of what he was doing constituted criminal conduct. There's no question here that going into the store and trying to rob the store clerk was a criminal offense. I don't think there's any challenge here that Berry didn't understand that what he was doing was a crime. So Teague and Bowie don't apply here. So unless the Court has any other further questions, I'll gladly take Judge Wardlaw's advice. Thank you. I'd like to address this notion that the State determines when it has jurisdiction over crimes on Indian land. The Supreme Court has noted that the States can be the greatest adversary and the deadliest enemies to tribes. And that should drive the consideration, as well as the supremacy clause, as to how do we determine whether the State has jurisdiction in this case. Now McBratney doesn't apply to this case for the simple reason that we have cases like the United States v. Chavez, people of the State of New York v. Martin. Those are from lower courts, right? Those were Supreme Court cases, Your Honor. And they stand for the general proposition that the State does not have the power to punish crimes on Indian land that target or affect Indian property or that affect the rights of tribes. But that's not what your client was convicted of. But whether he was convicted of that or not, that is the reality. And what drives this are principles of tribal sovereignty. And the State's ability to infringe upon that tribal sovereignty. Now, counsel cited to the Burns case. The Burns case is a perfect example of how those principles of tribal sovereignty guide these questions. In the Burns case, this court expansively interpreted the Indian Major Crimes Act to come to the conclusion that it did. And it did that because the tribes are wards of the federal government. And the expansive reading or interpretation of tribal laws is appropriate for the reasons I noted before. Now, in this case, we have the complete opposite problem. We have a state that is infringing upon the rights of the tribes. And we have a prosecutor that decides, despite the Nevada legislature twice renouncing jurisdiction, we have a prosecutor that can decide when and when he doesn't get to prosecute these cases. That's a very important question. And that's why I think the law in McBradden should be read narrowly. And that's, I think, what the law demands. Thank you, Counsel. Barry B. Olson will be submitted.
judges: Siler, WARDLAW, SMITH